UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
In re:                                                                                  Chapter 7

      DAVID RUSI                                                        Case No. 23-40150-jmm

                             Debtor.
-------------------------------------------------------X
SHEET METAL WORKERS' NATIONAL
PENSION FUND, INTERNATIONAL TRAINING
INSTITUTE FOR THE SHEET METAL AND AIR
CONDITIONING INDUSTRY, SHEET METAL
OCCUPATIONAL HEALTH INSTITUTE TRUST,
NATIONAL ENERGY MANAGEMENT INSTITUTE                    Adv. Pro. No.
COMMITTEE, and NATIONAL STABILIZATION
AGREEMENT OF THE SHEET METAL INDUSTRY
TRUST FUND,

                            Plaintiffs,

     v.

DAVID RUSI,

                          Defendant.
-------------------------------------------------------X

**ADVERSARY PROCEEDING VERIFIED COMPLAINT OBJECTING TO DEBTOR'S DISCHARGE AND SEEKING A DETERMINATION OF THE NON-DISCHARGEABILITY OF A DEBT**

---

      Plaintiffs, the separate and individual Boards of Trustees of the Sheet Metal Workers' National Pension Fund ("NPF"), the International Training Institute for the Sheet Metal and Air Conditioning Industry ("ITI"), the Sheet Metal Occupational Health Institute Trust ("SMOHIT"), and the National Energy Management Institute Committee ("NEMIC"), and National Stabilization Agreement of the Sheet Metal Industry Trust Fund ("SASMI", and together with NPF, ITI, SMOHIT and NEMIC, referred to as "the Funds"), a creditor and party in interest in the above

referenced bankruptcy case, pursuant to Rules 4004, 4007 and 7001(6) of the Federal Rules of Bankruptcy Procedure, files this Complaint objecting to the entry of discharge and the dischargeability of debtor's, David Rusi ("Defendant"), debt to the Funds. In support of this adversary proceeding objecting to the entry of discharge and the dischargeability of Defendant's debt to the Funds under 11 U.S.C. §§ 727(a) and 727(c) and 11 U.S.C. §§ 523(a)(4) and 523(a)(6), the Funds respectfully represents to the Court as follows:

### Jurisdiction and Venue

1. This court has jurisdiction over the subject matter of this Complaint as a core proceeding pursuant to the provisions of 28 U.S.C. §§ 1334 and 157(b)(2)(I), 157(b)(2)(J) and 11 U.S.C. § 727 and 11 U.S.C. § 523 since this is a proceeding to determine the discharge of Defendant and the dischargeability of a particular debt.

2. Venue is proper before the United States Bankruptcy Court for the Eastern District of New York pursuant to 28 U.S.C. § 1409(a).

3. This court has fixed October 9, 2023, as the last day to file a Complaint to Object to Discharge of Debtor Under 11 U.S.C. § 727 and to Determine Dischargeability of Debt Under 11 U.S.C. § 523. This Complaint, therefore, has been timely filed. (Docket 39).

### Parties

4. Plaintiff Board of Trustees, Sheet Metal Workers' National Pension Fund ("NPF") is the collective name of the trustees of the Sheet Metal Workers' National Pension Fund. The NPF is an employee pension benefit plan within the meaning of Sections 3(2) and (3) of ERISA, 29 U.S.C. §§ 1002(2), (3), and a multiemployer plan within the meaning of Section 3(37)(A) of ERISA, 29 U.S.C. § 1002(37)(A), established and maintained for the purpose of providing pension benefits to eligible employees. The NPF is, and at all times material herein has been, a jointly

administered trust fund established pursuant to Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5). The Trustees of the NPF are duly authorized Trustees whose duty it is to administer the NPF for the benefit of the participants and beneficiaries of the NPF. The Trustees are "fiduciaries" within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and are empowered to bring this action pursuant to Sections 502(a)(3) and 502(g)(2) of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1132(g)(2). The trust, its Trustees and plan are individually or jointly referred to as "NPF" in this Complaint. The NPF is administered at 3180 Fairview Park Dr., Suite 400, Falls Church, VA 22042.

5. Plaintiff Board of Trustees, International Training Institute of the Sheet Metal and Air Conditioning Industry ("ITI") is the collective name of the trustees of the International Training Institute of the Sheet Metal and Air Conditioning Industry. ITI is an employee welfare benefit plan within the meaning of Sections 3(1) and (3) of ERISA, 29 U.S.C. §§ 1002(1), (3), and a multiemployer plan within the meaning of Section 3(37)(A) of ERISA, 29 U.S.C. § 1002(37)(A), established and maintained for the purpose of providing apprenticeship training and educational benefits to eligible employees. ITI is, and at all times material herein has been, a jointly administered trust fund established pursuant to Section 302(c)(6) of the LMRA, 29 U.S.C. § 186(c)(6). The Trustees of ITI are duly authorized Trustees whose duty it is to administer the plan for the benefit of the participants and beneficiaries of ITI. The Trustees of ITI are "fiduciaries" within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and are empowered to bring this action pursuant to Sections 502(a)(3) and 502(g)(2) of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1132(g)(2). The trust, its Trustees and plan are individually and jointly referred to as "ITI" in this Complaint. ITI is administered at 3180 Fairview Park Dr., Suite 400, Falls Church, VA 22042.

6.  Plaintiff Board of Trustees, Sheet Metal Occupational Health Institute Trust ("SMOHIT") is collectively the name of the trustees of the Sheet Metal Occupational Health Institute Trust. SMOHIT a jointly labor-management health and safety organization serving the sheet metal industry established under Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5). The trust and its trustees are individually and jointly referred to as "SMOHIT" in this Complaint. SMOHIT is administered at 3180 Fairview Park Dr., Suite 400, Falls Church, VA 22042.

7.  Plaintiff Board of Trustees, National Energy Management Institute Committee ("NEMIC") is the collective name of the trustees of the National Energy Management Institute Committee. NEMIC is a labor management committee established pursuant to Section 302(c)(9) of the LMRA, 29 U.S.C. § 186(c)(9), that is funded by contributions under various collective bargaining agreements. The committee and its trustees are jointly and severally referred to as "NEMIC" in this Complaint. NEMIC is administered at 3180 Fairview Park Dr., Suite 400, Falls Church, VA 22042.

8.  Plaintiff Board of Trustees, National Stabilization Agreement of the Sheet Metal Industry Trust Fund ("SASMI") is the collective name of the trustees of the National Stabilization Agreement of the Sheet Metal Industry Trust Fund. SASMI is an employee welfare benefit plan within the meaning of Section 3(1), (3) of ERISA, 29 U.S.C. § 1002(1), (3), and a multiemployer plan within the meaning of Section 3(37)(A) of ERISA, 29 U.S.C. § 1002(37)(A), established and maintained for the purpose of providing benefits to eligible employees. SASMI is, and at all times material herein, has been a jointly administered trust fund established pursuant to Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5). The trustees of SASMI are duly authorized Trustees whose duty it is to administer SAMSI for the benefit of the participants and beneficiaries of SASMI. The trustees of SASMI are "fiduciaries" within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C.

§ 1002(21)(A), and are empowered to bring this action pursuant to Sections 502(a)(3) and 502(g)(2) of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1132(g)(2). The trust, its trustees and plan are individually or jointly referred to as "SASMI" in this Complaint. SASMI is administered at 3180 Fairview Park Dr., Suite 400, Falls Church, VA 22042.

9. The Trustees of the Plaintiff Funds bring this action in their collective names or, as necessary or appropriate, in the name of the respective trusts or plans, and their participants, and beneficiaries pursuant to Federal Rule of Civil Procedure 17.

10. Debtor David Rusi ("Defendant") filed a Voluntary Petition for Relief under Chapter 7 of title 11 of the United States Code (the "Code") in this court on January 18, 2023 ("Bankruptcy Case").

11. Plaintiffs are creditors of the Defendant and are holders of unsecured claims in the amount of $144,386.37 in delinquent fringe benefit contributions, $232,756.45 in delinquent Exit Contributions, plus interest, attorneys' fees and costs.

12. Prior to filing the Petition, the Defendant engaged in trade and commerce within the State of New York by operating a construction and HVAC business known as Fahrenheit Mechanical, LLC ("Fahrenheit Mechanical").

13. Upon information and belief, and as shown by Defendant's petition and testimony at the 341 creditor's meeting, Defendant resides at 177 Benedict Road, Staten Island, New York 10304, was a shareholder and officer of Fahrenheit Mechanical, had a primary role in directing and managing the operations of business, and determined which of Fahrenheit Mechanical's creditors would be paid.

14. Fahrenheit Mechanical was signatory to, and bound by, a collective bargaining agreement ("Agreement" or "CBA") with Sheet Metal Workers Local Union No. 28 ["Union"];

5

Defendant executed the collective bargaining agreement on behalf of Fahrenheit Mechanical on April 18, 2018.

15. Pursuant to the CBA, Defendant was obligated to submit monthly remittance reports and fringe benefit contributions to NPF, ITI, SASMI, SMOHIT, and NEMIC for all hours worked or paid on behalf of Defendant's covered employees within the jurisdiction of Local 28.

16. Pursuant to the CBA, Defendant is obligated to abide by the terms and conditions of the Trust Agreement establishing the Plaintiff Funds, including any amendments thereto and policies and procedures adopted by the Boards of Trustees ("Trust Agreements").

17. Pursuant to Article V, Section 6(g) of the NPF Trust Agreement, an exit contribution is a type of contribution that an employer is obligated to pay under the Trust Agreement. As such, an employer's failure to make an exit contribution constitutes a delinquency and is treated in the same manner as any other delinquent contribution.

18. NPF's records show that Fahrenheit Mechanical ceased to have an obligation to contribute to NPF as of January 1, 2020.

19. Fahrenheit Mechanical failed to fulfill its obligations and, accordingly, in the Eastern District of Virginia, Alexandria Division, by and through Civil Action No. 1:20-cv-431, the Plaintiffs obtained a Judgment against Fahrenheit Mechanical in the amount of $644,244.00, with $144,386.37 of that amount representing delinquent contributions due for the period April 2018 to October 2019, and $232,756.45 of that amount representing delinquent Exit Contributions triggered as of January 1, 2020, all pursuant to Sections 502 and 515 of ERISA, 29 U.S.C. §§ 1132

and 1145, Section 301 of the LMRA, 29 U.S.C. § 185, the CBA, and the Trust Agreement governing the Plaintiffs.[1]

20. Under the CBA, contributions owed to Plaintiff NPF are considered trust assets. Thus, Article XII, Section 24(8), provides:

> Employer contributions are considered assets of the respective Funds and title to all monies paid into and/or due and owing to said Funds shall be vested in and remain exclusively in the Trustees of the respective funds.

21. Since contributions constitute trust assets, Defendant, David Rusi, as an officer, manager or agent of Fahrenheit Mechanical, is personally liable for Fahrenheit Mechanical's contribution debt as a fiduciary and Defendant knew or should have known of his fiduciary status since as least April 2018 when he signed the CBA.

22. Upon information and belief, Defendant has been in the construction business since October 12, 2016 and knew or should have known of his fiduciary obligations and liability under the New York Lien Law and the Employee Retirement Income Security Act of 1974 ["ERISA"].

23. On August 1, 2023, as authorized by New York Lien Law Sections 75 and 76, Plaintiffs asked Defendant to produce the books and records of Fahrenheit Mechanical so that Plaintiffs could determine the amounts owed to them on a project by project basis and the location of Lien Law trust assets. Defendant has not produced those records.

24. The Defendant may be served, pursuant to Fed R Bankr P 7004(b)(1), by mailing a copy of the Summons and Complaint to 177 Benedict Road, Staten Island, New York 10304, County of Richmond, State of New York which address constitutes either the Defendant's dwelling

---

[1] The Judgment of $644,244.00 includes other such amounts owed the Funds, including interest, liquidated damages, audit testing fees, and attorneys' fees and costs and some of which Defendant is responsible to Plaintiffs under this action.

house or usual place of abode or the place which the Defendant regularly conducts a business or profession.

### First Cause of Action

### (Objection to Discharge pursuant to 11 U.S.C. § 727(a)(3))

25. Plaintiffs' repeat and reallege each and every allegation contained in Paragraph Nos. "1" through "20" inclusive of this Complaint as if fully set forth at this point.

26. Plaintiffs object to the discharge of Defendant pursuant to 11 U.S.C. § 727(a)(3) on the grounds that Defendant has concealed or failed to keep or preserve and produce information, records, documents or paper from which his financial condition or business transactions might be ascertained.

27. On August 1, 2023, Defendant was asked by Plaintiffs to produce the documents concerning his financial condition as set forth in attached Exhibit A.

28. As of October 6, 2023, Defendant has not produced the requested records.

29. The discharge of Defendant should be denied under Section 727(a)(3).

### Second Cause of Action

### (Objection to Discharge pursuant to 11 U.S.C. § 727(a)(4))

30. Plaintiffs' repeat and reallege each and every allegation contained in Paragraph Nos. "1" through "25" inclusive of this Complaint as if fully set forth at this point.

31. Plaintiffs object to the discharge of Defendant pursuant to 11 U.S.C. § 727(a)(4) on the grounds that Defendant knowingly and fraudulently made a false oath or account or presented a false claim.

32. On or about July 7, 2023, Defendant filed a Second Amended Schedule with the Court and certified that he has not received any income from employment or from operating a

business during the period January 2021 through present, when in truth and fact documents produced by Defendant show that he received income from his business Fahrenheit Mechanical from 2021 through present in the following amounts:

    a. $20,000.00 on April 15, 2021;

    b. $13,000.00 on April 30, 2021;

    c. $3,100.00 on May 28, 2021;

    d. $3,700.00 on June 18, 2021;

    e. $2,500.00 on August 23, 2021;

    f. $1,792.50 on June 14, 2022; and

    g. Voluminous cash deposits into Defendant's TD bank account ending *8336 throughout 2022.

33. Upon information and belief, Defendant received and benefited from PPP loan payments to Fahrenheit Mechanical of $3,100.00 on May 28, 2021, and $3,000.00 on July 2, 2021.

34. Upon information and belief, Defendant benefited from and received an additional $20,300.00 in Fahrenheit Mechanical PPP loan proceeds between March 23, 2021, and March 31, 2021.

35. On July 7, 2023, Defendant filed a Second Amended Schedule with the Court certifying that he did not have any legal or equitable interest in any bonds, mutual funds or publicly traded stocks, when in truth and fact, the Defendant produced documents showing his receipt of funds from Robinhood, a stock-trading and investment company, maintenance of a Robinhood account, and that he deposited at least $1,000.00 into that Robinhood account.

36. On July 7, 2023, Defendant filed a Second Amended Schedule with the Court certifying that he had not received any other income due to gambling during the year of filing or

the two (2) previous calendar years (January 2021-Petition Date), when upon information and belief, Defendant earned $7,510.00 for 2021 and $1,245.00 for 2022 in gambling winnings.

37. On July 7, 2023, Defendant filed a Second Amended Schedule with the Court certifying that he had no legal or equitable interest in a non-publicly traded stock or interest in incorporated or unincorporated business, including an LLC, partnership and joint venture and yet, Defendant otherwise represents in records and testified at the Section 341(a) meeting that he owns 70% of Fahrenheit Mechanical LLC.

38. Upon information and belief, Defendant holds additional legal or equitable interests in businesses, not yet identifiable other than Fahrenheit Mechanical.

39. On July 7, 2023, Defendant filed a Second Amended Schedule with the Court certifying that he had not provided a financial statement to anyone about his business within two (2) years preceding the bankruptcy petition date, when in truth and fact, Defendant's company Fahrenheit Mechanical received a Paycheck Protection Program loan of $441,300.00 on March 19, 2021 from Newtek Small Business Finance, LLC and certain financial statements were provided in order to secure the loan.

40. On July 7, 2023, Defendant filed a Second Amended Schedule with the Court certifying that he had no ownership or lease interest in electronics or sports equipment for hobbies and yet, Defendant produced records showing Defendant made payments on electronics such as Apple.com, Best Buy, and X-Box.

41. On July 7, 2023, Defendant filed a Second Amended Schedule with the Court certifying that he had not made any gifts with a total value of $600.00 to any person within the two (2) years preceding the bankruptcy petition, when in truth and fact, records produced by Defendant

show that he made payments in excess of $25,000.00 to Geena Inzerillo, now former girlfriend, during the period January 2021 to present.

42. As provided in 28 U.S.C. § 1746, Defendant certified that the Schedules filed by him were true and correct and such certification had the force and effect of an oath.

43. The discharge of Defendant should be denied under Section 727(a)(4).

## Third Cause of Action

### (Objection of Dischargeability of Claim Under New York Lien Law)

44. Plaintiffs' repeat and reallege each and every allegation contained in Paragraph Nos. "1" through "39" inclusive of this Complaint as if fully set forth at this point.

45. Pursuant to the CBA, Defendant was obligated to submit monthly remittance reports and fringe benefit contributions to NPF, ITI, SASMI, SMOHIT, and NEMIC for all hours worked or paid on behalf of Defendant's covered employees within the jurisdiction of Local 28.

46. Pursuant to the CBA, Defendant is obligated to abide by the terms and conditions of the Trust Agreement establishing the Plaintiff Funds, including any amendments thereto and policies and procedures adopted by the Boards of Trustees ("Trust Agreements").

47. Pursuant to Article V, Section 6(g) of the NPF Trust Agreement, an exit contribution is a type of contribution that an employer is obligated to pay under the Trust Agreement. As such, an employer's failure to make an exit contribution constitutes a delinquency and is treated in the same manner as any other delinquent contribution.

48. During the period April 2018 through October 2019 and in connection with various construction projects, the Defendant's company Fahrenheit Mechanical employed individuals covered by the CBA who performed work on certain construction projects in New York for the

benefit of the projects and, thus, Defendant became obligated to remit $144,386.37 in contributions to the Plaintiffs with regard to hours worked by those employees.

49. As a result of the labor supplied by employees, the Defendant, upon information and belief, received sums of money from these construction projects, which monies constituted trust assets within the meaning of the New York Lien Law and were to be used to pay the cost of the employees' labor in connection with the projects and the claims of the Plaintiffs.

50. Defendant is a statutory trustee of the construction proceeds received by him and the proceeds received by him are separate trust funds for the benefit of Plaintiffs.

51. The Defendant failed to remit $144,386.37 in contributions to the Plaintiffs in connection with work performed by employees at the construction projects and, as a result, $144,386.37 in trust assets plus interest, attorneys' fees and costs, and $232,756.45 in Exit Contributions plus interest, attorneys' fees and costs are due and owing the Plaintiffs.

52. Upon information and belief, the Defendant transferred, applied, used or diverted the New York Lien Law Article 3-A trust assets, or permitted such to occur, to purposes other than purposes of the trusts without first making payment to Plaintiffs.

53. Upon information and belief, Defendant transferred, applied, used or diverted the trust assets to pay improper expenses unrelated to the construction projects, including, but not limited to, overhead expenses such as auto loans, telephone bills, $625,711.00 in officer wages/draws in 2018, and $272,589.30 in officer wages/draws from April through June 2019.

54. A review of the records produced by Defendant for Fahrenheit Mechanical for the period October 2018 through November 2021 reveal purchases for flowers, $1,000.00 luxury perfume, $35,000.00 in gifts to a Genna Inzerillo, vacation expenses, entertainment membership

and subscription fees, beach house ownership membership dues, and payments to family members, including, but not limited to, $250,000.00 to Defendant's father in October 2020.

55. Upon information and belief, the transfer of the sums of money to purposes other than that of the Lien Law trusts occurred with the knowledge, consent, and/or at the direction of Defendant and the transfer by the Defendant is in violation of the Lien Law of the State of New York.

56. Upon information and belief, Defendant abused his position as a fiduciary by permitting, directing or instigating this transfer, application, use or diversion in a manner contrary to his fiduciary obligation and his action is a breach of trust under Article 3-A of the New York Lien Law.

57. Upon information and belief, trust funds have been wrongfully diverted and/or converted by Defendant in an amount not exactly known by the Plaintiffs, and the amount of the trust funds cannot be ascertained without Defendant's compliance with Plaintiffs' Lien Law Section 75 and 76 request and Plaintiffs' opportunity to conduct a complete review of the New York Lien Law books and records.

58. Upon information and belief, by reason of the wrongful diversion and/or conversion of the trust assets, the Plaintiffs have not been paid monies rightfully due to them.

59. As a result of his breach of fiduciary duty and misconduct, Defendant is liable to the Plaintiffs for $144,386.37 in unpaid fringe benefit contributions during the period April 2018 through October 2019 plus interest, and the costs and fees of collection.

60. As a result of his fraud or defalcation while acting in a fiduciary capacity and his willful and malicious conduct, pursuant to Section 523(a)(4) and Section 523(a)(6) of the

Bankruptcy Code, Defendant is not entitled to be granted a discharge in connection with the debt owed Plaintiffs.

**WHEREFORE**, Plaintiffs demand judgment against Defendant as follows:

A. Deny, pursuant to 11 U.S.C. §§727(a)(3) and 727(a)(4), Defendant's discharge in bankruptcy; and

B. Declare that Defendant comply with Plaintiffs' Lien Law Section 75 and 76 request and that Defendant be required to account for the New York Lien Law trust funds which were received for work covered by the CBA;

C. Declare that Defendant is a trustee of such sums aggregating the amount of $144,386.37 for trust funds and $232,756.45 for Exit Contributions or so much as may be necessary to pay the claims of Plaintiffs;

D. Declare that Plaintiffs recover from Defendant the sum of $144,386.37 for trust funds and $232,756.45 for Exit Contributions, plus applicable interest thereon and reasonable attorneys' fees and costs;

E. Deny, pursuant to 11 U.S.C. §523(a)(4), § 523(a)(6) and § 523(c)(1), Defendant a discharge from Plaintiffs' claim and enter judgment against Defendant for diversion of trust funds under Article 3-A of the New York Lien Law in the amount of $144,386.37 for trust funds and $232,756.45 for Exit Contributions, plus applicable interest thereon and reasonable attorneys' fees and costs;

F. Award such other and further relief as the Court deems just and proper.

Dated: Falls Church, Virginia
       October 9, 2023

Respectfully submitted,

*[signature: Heather S. Mooneyham]*

Heather S. Mooneyham *(pro hac vice)*
Legal Counsel, Sheet Metal Workers' National Pension Fund
3180 Fairview Park Drive, Suite 400
Falls Church, VA 20191
(703) 739-7009
hmooneyham@smwnbf.org