UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
In Re:

        DAVID RUSI,

                              Debtor,
-------------------------------------------------------------------------X
SHEET METAL WORKERS' NATIONAL
PENSION FUND, INTERNATIONAL
TRAINING INSTITUTE FOR THE SHEET
METAL AND AIR CONDITIONING
INDUSTRY, SHEET METAL OCCUPATIONAL
HEALTH INSTITUTE TRUST, NATIONAL
ENERGY MANAGEMENT INSTITUTE
COMMITTEE, and NATIONAL STABILIZATION
AGREEMENT OF THE SHEET METAL
INDUSTRURY TRUST FUND,

                           Plaintiffs,

    v.

DAVID RUSI,

                           Defendant.
-------------------------------------------------------------------------X

Chapter 7

Case No. 23-40150-jmm

Adv. Pro. No.:
1-23-01088-jmm

## *AFFIRMATION OF DEFENDANT IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF COUNTERSTATEMENT*

David Rusi pursuant to New York Civil Practice Law and Rules 2106 and under penalty of perjury affirms as follows:

1. I am the defendant in this Adversary Proceeding.

2. I make this affirmation in opposition to the motion brought by the plaintiffs.

3. The instant action concerns debts owed to plaintiffs by Fahrenheit Mechanical LLC ("Fahrenheit").

4. I do not dispute that Fahrenheit is a company of which I was a majority shareholder.

5. I do strenuously object to characterizations made in Plaintiff's papers that I knowingly and recklessly diverted project trust funds for improper purposes as the controlling member of Fahrenheit Mechanical LLC.

6. In fact, the books and records of Fahrenheit would reflect any advances to me as a loan or a repayment or as salary.

7. Fahrenheit performed mechanical services in New York City at varied locations.

8. Fahrenheit was owned by me, Valon Sela and Omar Merchant. I owned about 70% of the shares, Mr. Sela owned somewhere between 25 and 30%. Mr. Merchant owned the balance of the shares.

9. Fahrenheit Mechanical was operated as a corporation by myself, Valon Sela and Omar Merchant.

10. As part of my duties at Fahrenheit, I would meet clients, entertain clients, and obtain contracts.

11. Valon Sela's role at the corporation was operations. In this role, Mr. Sela oversaw the fieldwork, and he handled these field matters for the company.

12. Omar Merchant served as Chief Financial Officer of the company. Mr. Merchant handled the finances.

13. I fully and wholly relied upon Valon for conducting the work at the projects.

14. I fully and wholly relied upon Omar for maintaining the books and records of Fahrenheit.

15. While I was signatory on the checks, I did not maintain the books and records of Fahrenheit, rather I relied upon Omar as described above.

16. I never consented to any "diversion" of funds.

17. Fahrenheit Mechanical did hold staff meetings. Omar, Val, and myself would meet to discuss our plan of action going forward or for other items of importance.

18. I relied upon Omar to handle the finances of the company. I was never cavalier. I was unaware and I was reliant upon Omar. I was handling client development, sales and obtaining contracts.

19. I relied upon Val to take care of field operations.

20. I never advocated "not paying" vendors or other corporate obligations, rather it was a question of which expenses needed to be paid to keep the jobs running smoothly enabling us to collect receivables.

21. During the entire period of its operations Fahrenheit maintained QuickBooks records and all other standard accounting records.

22. From its inception in 2018 through 2020, Fahrenheit operated as a company. It was run, as stated above, by me, handling sales and other items; Omar Merchant, handling the finances; and, Valon Sela handling the fieldwork.

23. Unfortunately, towards the end of 2020, after the departure of Valon Sela from the company, I came to realize there were severe financial issues in play.

24. At about this point, my personal situation fell apart.

25. As I was suicidal, I was checked into a psychiatric ward.

26. After seven days in the psychiatric ward, I was checked into a rehabilitation program.

27. These events confined me for about two months, and I was unable to function or operate Fahrenheit Mechanical.

28. I dispute any allegation that Fahrenheit Mechanical failed to maintain books and records.

29. In fact, when Omar Merchant appeared for his deposition, he brought a drive with documents which comport with and, at least partially, confirm that Fahrenheit did maintain its books and records.

30. My attorneys have advised me that the inability to locate the books and records is different than a failure to maintain books and records.

31. My excuse for not being able to locate these books and records is as explained above.

32. I never had any intent to deceive or trick or defraud any of my creditors.

33. Fahrenheit Mechanical operated and performed work, labor and services.

34. At the point of my troubles described above, I was away for about two months, unable to participate in operating Fahrenheit.

35. By the time I could continue, Fahrenheit had closed and I understood its records were stored.

36. I was able to provide multiple bank statements which did establish the financial condition of Fahrenheit.

37. I have subsequently discovered that the books and records of Fahrenheit were not at the location where I had been told they were stored.

38. I diligently searched for these items. I visited the warehouse where the items were delivered. I questioned employees at these locations but was unable to locate any documents.

39. Fahrenheit, though not a party in this bankruptcy, did supply voluminous records to Plaintiff.

40. These included the aforementioned: bank statements, and tax returns of the debtor and returns of Fahrenheit.

41. Again, I strenuously object to the characterization that Fahrenheit (or myself vicariously) failed to maintain books and records.

42. I did not act in bad faith; but was stopped from providing much of this information due its disappearance during my time of incapacity and inability to attend to the affairs of Fahrenheit.

43. I do not know of any "non-cash" component of the Spendthrift Trust established for myself.

44. It appears to me that Plaintiff is seeking to obfuscate certain issues herein. Fahrenheit Mechanical is not a party to this Adversary Proceeding.

45. It appears to me that Plaintiff is not recognizing the distinction between myself and Fahrenheit.

46. I do understand that Plaintiff obtained a default judgment against Fahrenheit Mechanical in the District Court of Virginia. I am however, largely unaware of the steps taken by Plaintiff to enforce this Judgment.

47. Further, I object to any conclusions inferred by Plaintiff that my schedules contained errors. I never knowingly filed a false statement, and my schedules and papers were true to the best of my knowledge at the time of them being filed.

48. I never intentionally engaged in self-dealing with the intent of diverting funds.

49. All my actions were geared towards making Fahrenheit profitable. I do not recall utilizing words such as its "my company" in discussions with Omar Merchant about Fahrenheit.

50. I wanted Fahrenheit to be profitable for its owners.

51. Any funds that were received by Fahrenheit were paid to Fahrenheit. Those funds received by me were either a draw, a loan or a repayment, and would be reflected as such.

52. Similarly, payments to credit card companies were for corporate purposes or repayment of funds used for corporate purposes.

53. Regardless of Plaintiffs' continued use of words such as "reckless disregard" or "diversion" I did not act in that manner.

54. As I stated before, I was trying to make Fahrenheit profitable. I met with Omar Merchant and Val Selon and other employees of Fahrenheit regularly and often to resolve issues.

55. These issues included cash flow, receivables, new work, and other items that would arise.

56. In fact, as with the documents produced by Mr. Merchant at his deposition corroborating my recounting of the events, Mr. Merchant in his testimony confirms that meetings did occur to discuss business.

57. Mr. Merchant acknowledges that 20-50 formal meetings were held.

58. This does not include the numerous less formal discussions / meetings more frequently held.

59. The simple fact remains that I did try to make Fahrenheit a successful business. Fahrenheit did meet its obligations and achieved some level of success as a business entity.

60. When personal issues incapacitated me, I was unable to handle Fahrenheit's operations.

61. By the time I returned Farenheit's records were relocated. I diligently searched for those records and was unable to find them.

62. I never engaged in bad faith conduct and always acted in good faith.

**WHEREFORE** it respectfully requested that this Court deny the motion by Plaintiffs and grant to me, such further and different relief as this Court deems fair just and proper.

Dated: Staten Island, New York
February 12, 2025

/s/ *David Rusi*_____
David Rusi, pursuant to CPLR 2106, affirms under penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law.