UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>David Rusi,<br><br>　　　　　　　　Debtor. | Chapter 7<br><br>Case No. 23-40150-jmm |
| Sheet Metal Workers' National Pension Fund, International Training Institute for The Sheet Metal And Air Conditioning Industry, Sheet Metal Occupational Health Institute Trust, National Energy Management Institute Committee, and the National Stabilization Agreement of the Sheet Metal Industry Trust Fund,<br><br>　　　　　　　　Plaintiffs,<br><br>　　　v.<br><br>David Rusi, an individual,<br><br>　　　　　　　　Defendant. | Adv. Proc. No. 1-23-01088-jmm |

## MEMORANDUM DECISION GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT IN PART

Heather Mooneyham, Esq.
3180 Fairview Park Drive
Suite 400
Falls Church, Virginia 22042

J. Logan Rappaport, Esq.
Hinshaw & Culbertson LLP
800 Third Avenue
Ste 13th Fl.
New York, NY 10022

*Attorneys for Plaintiffs*

John J. Macron, Esq.
491 Bard Avenue
Staten Island, NY 10310

*Attorney for David Rusi*

## INTRODUCTION

The Defendant is an individual that owned and operated Fahrenheit Mechanical LLC ("Fahrenheit Mechanical"), a contractor or subcontractor providing heating, air conditioning, and ventilation systems. The Plaintiffs are the Boards of Trustees of (i) the Sheet Metal Workers' National Pension Fund ("NPF"), (ii) the International Training Institute for the Sheet Metal And Air Conditioning Industry, (iii) the Sheet Metal Occupational Health Institute Trust, (iv) the National Energy Management Institute Committee, and (v) the National Stabilization Agreement of the Sheet Metal Industry Fund.

The Plaintiffs allege the Defendant diverted funds that were held in trust to pay contributions to employee benefit funds and seek judgment declaring their claims against Defendant to be nondishargeable under 11 U.S.C. § 523(a)(4). The Plaintiffs also allege Defendant's diversion of funds was willful and malicious and therefore Plaintiffs' claims should be deemed nondischargeable under 11 U.S.C. § 523(a)(6). Additionally, Plaintiffs claim the Defendant's discharge should be denied under 11 U.S.C. § 727(a)(3) because the Defendant failed to disclose assets and income on his Schedules and Statement of Financial Affairs. Lastly, Plaintiffs claim the Defendant's discharge should be denied under 11 U.S.C. § 727(a)(4) because the Defendant failed to maintain books and records related to his financial condition.

For the reasons set forth below, the Court will enter judgment that Plaintiffs' claims are nondischargeable under 11 U.S.C. § 523(a)(4) and that Defendant's discharge is denied under 11 U.S.C. § 727(a)(3). However, there are disputes as to material facts respecting Plaintiffs' claim to deny Defendant's discharge under 11 U.S.C. § 727(a)(4). Accordingly, Plaintiffs' motion for summary judgement is denied on that cause of action. Lastly, the Court will dismiss Plaintiffs'

objection to dischargeability of their claim under 11 U.S.C. § 523(a)(6) because Plaintiffs have failed to satisfy their burden of proof on that cause of action.

## JURISDICTION

The Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157(a) and 1334(b) and the Eastern District of New York Standing Order of Reference dated August 28, 1986, as amended by Order dated December 5, 2012.  The Court may hear and determine this adversary proceeding as it is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(I) and (J).  This decision constitutes the Court's findings of fact and conclusions of law, to the extent required by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## PROCEDURAL BACKGROUND

On October 9, 2023, Plaintiffs filed a Complaint commencing this adversary proceeding. Adv. Proc. ECF No. 1.[1]  The Complaint asserts three Causes of Action.  The First Cause of Action seeks judgment denying the Defendant a discharge under 11 U.S.C. § 727(a)(3).  The Second Cause of Action seeks judgment denying the Defendant a discharge under 11 U.S.C. § 727(a)(4).  The Third Cause of Action seeks judgment that Plaintiffs' claims are nondischargeable under 11 U.S.C. §§ 523(a)(4) and (a)(6).  Defendant timely answered the Complaint.  Adv. Proc. ECF No. 5.

On January 21, 2025, Plaintiffs moved for summary judgment.  *See* Mot. Summ. J., Adv. Proc. ECF No. 21; Am. Decl. Heather Mooneyham, Adv. Proc. ECF No. 22; Mem. Law Supp. Pl. Mot. Seeking Summ. J. ("Pl. MOL"), Adv. Proc. ECF No. 23; Am. Statement Undisputed

---

[1] Citations to "Adv. Proc. ECF No. __" are references to documents filed on the docket of the above-captioned adversary proceeding.

Material Facts, Adv. Proc. ECF No. 30 ("Am. Statement of Facts"); Second Am. Decl. Heather

Mooneyham ("Mooneyham Decl.")[2], Adv. Proc. ECF Nos. 35 and 36.

On February 12, 2025, Defendant filed opposition to Plaintiffs' motion for summary

judgment.  Aff. Def. Opp. Summ. J., Adv. Proc. ECF No. 31; Mem. Law Opp. Mot. Summ. J.,

Adv. Proc. ECF No. 32; Def. Counter-Statement Material Facts Resp. Am. Statement

Undisputed Material Facts, Adv. Proc. ECF No. 33 ("Def. Counter-Statement").  The Court

heard oral arguments on March 11, 2025.

## **FINDINGS OF FACT**

Fahrenheit Mechanical, LLC

Fahrenheit Mechanical is a construction and HVAC (i.e., heating, ventilation, and air

conditioning) subcontractor that operated in New York state.  Am. Statement of Facts ¶ 4.

Fahrenheit Mechanical operated from 2018 through 2020.  Aff. Def. Opp. Summ. J. ¶ 22.

Between April 2018 and the date Fahrenheit Mechanical ceased operations, Fahrenheit

received payments for specific HVAC projects.  Def. Dep., 140:5–9, July 2, 2024, Adv. Proc.

ECF No. 21-5 ("Def. Dep."); Am. Statement of Facts ¶ 134.  Fahrenheit Mechanical had "job

income" of $2,166,684.18 for April 2019 through June 2019 and $1,126,429.04 for April 2020

through June 2020.  Am. Statement of Facts ¶ 134.  Fahrenheit Mechanical employed between

18 and 21 employees.  Am. Statement of Facts ¶¶ 143–145.  From April 2018 through October

2020, Fahrenheit Mechanical paid at least $3.4 million in payroll to employees via its payroll

processors.  Am. Statement of Facts ¶ 148.

Defendant owned at least 70% of the ownership interests in Fahrenheit Mechanical.  Am.

Statement of Facts ¶¶ 115116.  Defendant was Fahrenheit Mechanical's managing member and

CEO.  Am. Statement of Facts ¶ 2.  Defendant was Fahrenheit Mechanical's principal decision

---

[2] Exhibits to Mooneyham Decl. are found at Adv. Proc. ECF Nos. 21–26.

maker and responsible for determining when and how much creditors would be paid.   Def. Dep. 36:17–23, 61:2–18; Am. Statement of Facts ¶ 117.

Towards the end of 2020, Defendant became ill.  Aff. Def. Opp. Summ. J. ¶¶ 23–25.  He spent seven days in a psychiatric ward and then checked into a rehabilitation program.  Aff. Def. Opp. Summ. J. ¶ 26.  For approximately two months, Defendant was unable to manage Fahrenheit Mechanical.  Aff. Def. Opp. Summ. J. ¶¶ 27, 34.  Fahrenheit Mechanical closed while the Defendant was incapacitated.  Aff. Def. Opp. Summ. J. ¶ 35.

After Fahrenheit Mechanical ceased operating, someone moved Fahrenheit Mechanical's books and records to a warehouse owned by Defendant's father.  Def. Dep. 52:20–53:3.  The books and records were moved after Defendant was admitted to a psychiatric ward and before Defendant resumed his business activities.  Aff. Def. Opp. Mot. Summ. J. ¶ 35.  Defendant claims he "diligently searched" for Fahrenheit Mechanical's books and records at the warehouse but could not locate any documents.  Aff. Def. Opp. Mot. Summ. J. ¶ 38.

Defendant has not produced to Plaintiffs the following records respecting Fahrenheit Mechanical's operations and finances:

- "[A]ccounts receivable and payable, general ledger, profit and loss statements, job lists, job accountings, contracts, estimates, invoices, progress payment ledgers, or other routinely kept business records [to] Plaintiffs. . . ."  Am. Statement of Facts ¶ 86.

- The names, job duties, or titles of employees, a "list of general contractors and property owners at Fahrenheit Mechanical's construction projects," a "list of subcontractors employed by Fahrenheit Mechanical," or "an accounting of fringe benefit contributions remitted on employees behalf."  Am. Statement of Facts ¶ 87.

- Business overhead expense records.  Am. Statement of Facts ¶ 88.

- Records memorializing loans to Fahrenheit from its members or Defendant's family.  Am. Statement of Facts ¶ 89.

Fahrenheit Mechanical maintained a bank account at Alma Bank with an account number ending in 3466 (the "Alma Account"), JPMorgan Chase Bank with an account number ending in 0757 (the "JPMorgan Account"), and TD Bank with an account number ending in 0184 (the "TD Account"). Am. Statement of Facts ¶¶ 42, 118. Defendant was the sole authorized signatory for the Alma Account. Am. Statement of Facts ¶ 118. Defendant signed checks for Fahrenheit Mechanical and controlled the debit cards for Fahrenheit Mechanical's Alma Account and JPMorgan Account. Am. Statement of Facts ¶¶ 123–127.

Defendant has not identified anyone, other than himself, that was authorized to, or, in fact did, write checks on, transfer funds from, or withdraw funds from, the Alma Account or JPMorgan Account. *See* Def. Counter-Statement ¶¶ 118, 125–127; Def. Dep. 301: 10–14. Defendant has not identified anyone, other than himself, that controlled the debit cards for the Alma Account or JPMorgan Account. *See* Def. Counter-Statement ¶¶ 118, 125–127; Def. Dep. 301: 10–14.[3]

Defendant's Prior Business Experience

Defendant had experience in the construction industry prior to opening Fahrenheit Mechanical. Def. Dep. 17:5–7; Am. Statement of Facts ¶ 95. During his childhood he worked for his father's roofing business. Def. Dep. 17:8–12; Am. Statement of Facts ¶ 95. Defendant worked as an engineer's helper during his high school and college summers. Def. Dep. 17:12–14; Am. Statement of Facts ¶ 96. Defendant operated a small contracting company named S.D.B. Contracting, LLC. Def. Dep. 290:15–21; Am. Statement of Facts ¶ 100. After, Defendant opened the Phoenix Network LLC, a general contracting company. Def. Dep. 19:5–8;

---

[3] Plaintiffs' and Defendant's statements of facts are silent respecting whether the Defendant solely controlled the TD Account.

Am. Statement of Facts ¶ 98.  He was CEO and, at some point, the owner of Phoenix Network, LLC.  Def. Dep. 18:5–20:4; Am. Statement of Facts ¶ 98.

The CBA and Trust Agreement

The Sheet Metal & Air Conditioning Contractors Association of New York City, Inc., as employer, SMACNA of Long Island, Inc., as employee, and the International Association of Sheet Metal, Air, Rail, and Transportation, as the union, are parties to a Collective Bargaining Agreement (as amended, the "CBA").  Mooneyham Decl., Ex. E, Adv. Proc. ECF No. 24-1; Mooneyham Decl., Ex. F, Adv. Proc. ECF No. 21-7.

The CBA incorporates by reference the Agreement and Declaration of Trust (the "Trust Agreement") establishing the NFP.  CBA, Article XII, Section 21.C.  The CBA provides that the employer has adopted the Trust Agreement.  CBA, Article XII, Sections 21.C., 24.A.

According to the Memorandum of Understanding, dated April 18, 2018 (the "MOU") between Sheet Metal, Air, Rail and Transportation Workers' Local Union 28 (the "Union") and Fahrenheit Mechanical, the parties agreed that the CBA shall constitute the collective bargaining agreement between the Union and Fahrenheit Mechanical from April 18, 2018, through July 31, 2020.  Mooneyham Decl., Ex. F, Adv. Proc. ECF No. 21-7, at 3.  David Rusi signed the MOU on behalf of Fahrenheit Mechanical as its President.  *Id.*

Amounts Owed to the Funds

On April 16, 2021, the United States District Court for the Eastern District of New York entered a $644,244.40 default judgment against Fahrenheit Mechanical, inclusive of $144,386.37 of delinquent contributions and $348,051.19 of exit contributions.  Mooneyham Decl., Ex. L, Adv. Proc. ECF No. 21-13; Am. Statement of Facts ¶¶ 22–23.

On January 26, 2024, the NPF filed a Proof of Claim, identified as Claim Number 9-1 asserting a $776,358.21 claim based on delinquent contributions owed to a multiemployer pension fund.  *In re David Rusi*, 23-40150-jmm, Claims Register (Bankr. E.D.N.Y. 2024).  The Defendant has not objected to the proof of claim or otherwise disputed the amounts claimed to be owed to the Plaintiffs.

The Bankruptcy Case

The Defendant filed a petition for relief under chapter 7, title 11, of the United States Code (the "Bankruptcy Code") on January 18, 2023 (the "Petition Date").  *In re David Rusi*, 23-40150-jmm, Bankr. ECF No. 1 (Bankr. E.D.N.Y. 2024)[4].

The Defendant's Schedules

The Defendant filed his Schedules of Assets and Liabilities and Statement of Financial Affairs on the Petition Date.  Bankr. ECF No. 1.  The Defendant filed Amended Schedules of Assets and Liabilities and an Amended Statement of Financial Affairs on May 9, 2023.  Bankr. ECF No. 31.  The Defendant filed Second Amended Schedules and a Second Amended Statement of Financial Affairs on July 7, 2023.  Bankr. ECF No. 36.  The Defendant signed the original, First Amended, and Second Amended Schedules of Assets and Liabilities and Statements of Financial Affairs under penalty of perjury.  Decl. About Individual Debtor's Schedules, Bankr. ECF No. 1; Decl. About Individual Debtor's Schedules, Bankr. ECF No. 31; Decl. About Individual Debtor's Schedules, Bankr. ECF No. 36; Statement Fin. Affs., Bankr. ECF No. 1; Am. Statement Fin. Affs., Bankr. ECF No. 31; Second Am. Statement Fin. Affs., Bankr. ECF No. 36.

---

[4] Citations to "Bankr. ECF No. __" are references to the docket of the bankruptcy case captioned *In re Rusi*, Case No. 23-40150-jmm.

The Defendant represented in his original Statement of Financial Affairs, Amended Statement of Financial Affairs, and Second Amended Statement of Financial Affairs that:

- within the two years prior to the Petition Date, he had not given any person any gifts with a total value of more than $600. Statement Fin. Affs., Bankr. ECF No. 1, Part 5; Am. Statement Fin. Affs., Bankr. ECF No. 31, Part 5; Second Am. Statement Fin. Affs., Bankr. ECF No. 36, Part 5.

- he had no income from employment or from operating a business from January 18, 2020, through the Petition Date. Statement Fin. Affs., Bankr. ECF No. 1, Part 2; Am. Statement Fin. Affs., Bankr. ECF No. 31, Part 2; Second Am. Statement Fin. Affs., Bankr. ECF No. 36, Part 2.

- he received no income from gambling from January 18, 2020, through the Petition Date. Statement Fin. Affs., Bankr. ECF No. 1, Part 2; Am. Statement Fin. Affs., Bankr. ECF No. 31, Part 2; Second Am. Statement Fin. Affs., Bankr. ECF No. 36, Part 2.

The Defendant represented in his original and First Amended Schedule A/B that, as of the Petition Date, he:

- did not own or have any legal or equitable interests in any non-publicly traded stock or interests in any LLCs. Schedule A/B, Bankr. ECF No. 1, Part 4; Am. Schedule A/B, Bankr. ECF No. 31, Part 4.

- had no money on deposit in any checking, savings, or other financial accounts. Schedule A/B, Bankr. ECF No. 1, Part 4; Am. Schedule A/B, Bankr. ECF No. 31, Part 4.

The Defendant represented in his original Schedule A/B that he owned four motorcycles. Schedule A/B, Bankr. ECF No. 1, Part 2. The Defendant represented in his First Amended Schedule A/B that he did not own any vehicles. Amended Schedule A/B, Bankr. ECF No. 31, Part 2.

## DISCUSSION

### Standards for Summary Judgment

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Mere existence of an alleged factual dispute is insufficient to defeat a properly supported motion for summary judgment. *Id.* at 247–48. The substantive law determines which facts are "material," which includes facts that may affect the outcome of the suit, but not facts that are "irrelevant or unnecessary. . . ." *Id.* at 248. The party opposing a motion for summary judgment bears the burden of setting forth specific facts showing there exists a genuine issue sufficient for trial. *Id.*

"In ruling upon a summary judgment motion, the court's job is not to resolve disputed issues of fact, but to determine whether a genuine issue of fact exists." *Bethpage Fed. Credit Union v. Freidman (In re Kabbalah Taxi Inc.)*, Adv. Pro. No. 18-1016-cec, 2018 Bankr. LEXIS 2226, at *5 (Bankr. E.D.N.Y. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986)). "When viewing the evidence, the court must 'assess the record in the light most favorable to the non-movant and . . . draw all reasonable inferences in [the non-movant's] favor.'" *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (quoting *Delaware & H. R. Co. v. Conrail*, 902 F.2d 174, 177 (2d Cir. 1990)).

A movant has the initial burden of establishing the absence of any genuine issue of material fact, which burden may be discharged by pointing out the absence of evidence supporting the non-moving party's case. *Celotex*, 477 U.S. at 323–25. Rule 56 "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. "The nonmoving party must show that there is more than a metaphysical doubt regarding a material fact and may not rely solely on self-serving

conclusory statements." *Rosenman & Colin LLP v. Jarrell (In re Jarrell)*, 251 B.R. 448, 450–51 (Bankr. S.D.N.Y. 2000) (internal citations omitted).  No genuine issue exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249–50.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Id.* (internal citations omitted).

### Objection to the Discharageability of Plaintiffs' Claims under Bankruptcy Code section 523(a)(4) due to Defendant's Fraud and Defalcation While Acting in a Fiduciary Capacity

Under Bankruptcy Code section 523, "[a] discharge under 727 . . . does not discharge any individual from any debt . . . for fraud or defalcation while acting in a fiduciary capacity. . . ." 11 U.S.C. §523(a)(4).  A claim may be deemed non-dischargeable under section 523(a)(4) if: (1) an express or technical trust existed; (2) the debtor acted in a fiduciary capacity with respect to the trust; and (3) the debt arose from a defalcation committed by the debtor.  *See Sheet Metal Workers Nat'l Pension Fund v. Kern (In re Kern)*, 542 B.R. 87, 95 (Bankr. E.D.N.Y. 2015); *Palisades Tickets, Inc. v. Daffner (In re Daffner)*, 612 B.R. 630, 651 (Bankr. E.D.N.Y. 2020); *Chao v. Duncan (In re Duncan)*, 331 B.R. 70, 77 (Bankr. E.D.N.Y. 2005); *Chitester v. Watterson (In re Watterson)*, 524 B.R. 445, 451 (Bankr. E.D.N.Y. 2015); *Michaels Electrical Supply Corp. v. Castagnola (In re Castagnola)*, Adv. Proc. No. 15-8163-las, 2017 WL 1337176, at * 3 (Bankr. E.D.N.Y. Apr. 11, 2017).  The plaintiff also must prove the debtor acted with a culpable state of mind "involving knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior."  *Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 269 (2013).

Express or Technical Trusts

Plaintiffs allege their claims arose in connection with express or technical trusts created under New York's lien law, the CBA, the Trust Agreement, and the Employee Retirement Income Security Act of 1974, as amended ("ERISA").

Section 70, Article 3-A of New York's lien law provides that "funds . . . received by a contractor . . . or . . . subcontractor under or in connection with a subcontract made with the contractor for such improvement of real property including a home improvement contract or public improvement or made with any subcontractor under any such contract . . . shall constitute assets of a trust."  N.Y. Lien Law § 70(1) (McKinney 2025).  The trust created under section 70, Article 3-A of New York's lien law (the "Article 3-A Trust") arises immediately upon the contractor's or subcontractor's receipt of funds.  N.Y. Lien Law § 70(3); *see also Burt Bldg. Material Corp. v. Silba (In re Silba)*, 170 B.R. 195, 200 (Bankr. E.D.N.Y. 1994) (Article 3-A Trust was created once the debtor received funds).  The assets of the Article 3-A Trust must be held and used solely for the purposes stated in N.Y. Lien Law § 71, which includes the "payment of any benefits or wage supplements, or the amounts necessary to provide such benefits or furnish such supplements, to the extent that the trustee, as employer, is obligated to pay or provide such benefits or furnish such supplements by any agreement to which he is a party."  N.Y. Lien Law § 71(d) (McKinney 2025).

An Article 3-A Trust is a trust for purposes of Bankruptcy Code section 523(a)(4).  *See In re Castagnola*, No. 14-75123-LAS, 2017 WL 1337176, at *4 (citing *New York v. Suarez (In re Suarez)*, 367 B.R. 332, 351–52 (Bankr. E.D.N.Y. 2007)) (recognizing that the New York Lien Law creates a valid trust for purposes [section] 523(a)(4)); *Sandak v. Dobrayel (In re Dobrayel)*, 287 B.R. 3, 15 (Bankr. S.D.N.Y. 2002) ("Article 3–A [of New York's lien law] clearly creates an express trust within the meaning of [s]ection 523(a)(4)"); *Scheidelman v. Henderson (In re Henderson)*, 423 B.R. 598, 623 (Bankr. N.D.N.Y. 2010) (same); *G.W. White & Son v. Tripp (In re Tripp)*, 189 B.R. 29, 35 (Bankr. N.D.N.Y. 1995) (same).

Fahrenheit Mechanical is a subcontractor that received funds in connection with one or more contracts or subcontracts to improve real property.  Am. Statement of Facts ¶¶ 4, 134.  As a result, a trust arose under the New York Lien Law.  Pursuant to N.Y. Lien Law § 71, the Plaintiffs are beneficiaries of that trust.

ERISA-covered employee benefit plans are statutory trusts for purposes of 11 U.S.C. § 523(a)(4).  *Trs. of the Sheet Metal Workers' National Pension Fund v. Kakareko (In re Kakareko)*, 575 B.R. 12, 21 (Bankr. E.D.N.Y. 2017); *see also Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 110 (1989) (noting ERISA "abounds with the language and terminology of trust law.").  The Trust Agreement states that its purpose is to hold assets to pay benefits, and the [NFP] is "intended to be a tax-qualified, multiemployer defined benefit pension plan and . . . is intended to be operated in accordance with the funding rules that apply to multiemployer pension plans under ERISA and the [Internal Revenue] Code [of 1986, as amended.]"  Trust Agreement, Article II, Section 2, Adv. Proc. ECF No. 21-8.  Defendant admits the "Plaintiffs are employee benefit plans/trust funds within the meaning of [ERISA], or joint labor-management organizations established and maintained for the purpose of providing benefits to certain collectively bargained sheet metal workers."  Am. Statement of Facts ¶ 1.

The CBA states, respecting employer contributions to both the local union and national benefit funds, that the "[e]mployer contributions are considered assets of the respective [f]unds and title to all monies paid into/or due and owing said [f]unds shall be vested in and remain exclusively in the [t]rustees of the respective funds.  The [e]mployer shall have no legal or equitable right, title, or interest in or to any sum paid by or due from the [e]mployer." CBA, CBA, Article XII, Section 19(B), Section 24(B).

Based on the foregoing, express and statutory trusts arose under ERISA, the Trust Agreement, and the CBA, and the Plaintiffs are beneficiaries of those trusts.

Fiduciary Capacity

The second element of a claim under section 523(a)(4) is whether the debtor acted in a fiduciary capacity with respect to the trust.  *See In re Duncan*, 331 B.R. at 80.  An officer or director of a corporate contractor is not a statutory trustee under an Article 3-A Trust; rather, the real property owner, contractor, or subcontractor is the trustee.  *See Bruce Supply Corp. v. Kofsky* (*In re Kofsky*), 351 B.R. 123, 128 (Bankr. S.D.N.Y. 2006) ("New York law does not make an officer or director of a corporate contractor a 'trustee' under the Lien Law . . . .").

However, a corporate contractor's or subcontractor's officer may be deemed a fiduciary of the Article 3-A Trust if the officer had direct control over the application of trust funds or knowingly participated in a breach of a trust created under the New York Lien Law.  *Atlas Bldg. Sys., Inc. v. Rende*, 236 A.D.2d 494, 495 (1997) ("the officers and directors of a corporate trustee are under a duty to the beneficiaries of a trust administered by the corporation not to cause the corporation to misappropriate trust property and will be personally liable for participation in a breach of trust.").

Under section 1002(21)(A) of ERISA, "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets."  29 U.S.C. § 1002(21)(A).

Defendant had direct control over the funds in the ERISA trust and the Article 3-A Trust. Defendant was the only authorized signatory for Fahrenheit Mechanical's bank accounts and controlled Fahrenheit Mechanical's use of funds.  Defendant was Fahrenheit Mechanical's majority member and its managing member.  Defendant was Fahrenheit Mechanical's principal

decision maker and responsible for determining when and how much creditors would be paid. Therefore, Defendant was a fiduciary of the Article 3-A Trust and the ERISA trust.

The Court finds that Plaintiffs have failed to prove that Defendant is a fiduciary by virtue of the CBA. Plaintiffs, citing to paragraphs 92 and 136 of the Mooneyham Declaration, claim that Defendant "does not dispute that he was a fiduciary pursuant to the CBA." Pl. MOL at 15. The Mooneyham Declaration, in turn, cites to Defendant's admissions of allegations 20 and 50 of the Complaint. Mooneyham Decl. ¶¶ 92, 136. Allegation 20 states in relevant part that contributions to the trust are trust assets. Adv. Proc. ECF No. 1 ¶ 20. Allegation 20 does not allege the Defendant is a fiduciary of any trust. *Id.* Allegation 50 states Defendant is a statutory trustee of the construction proceeds received by him. Adv. Proc. ECF No. 1 ¶ 50. Complaint allegation 50 only references statutory trustee and does not allege that Defendant is a trustee under the CBA. Therefore, Defendant's admission that he is a statutory trustee is not an admission that he is a trustee under the CBA.

Plaintiffs also argue Defendant is a trustee under the CBA because he admitted he signed the CBA and exercised control of Fahrenheit Mechanical and its bank account. Pl. MOL at 15. Plaintiffs do not provide the Court with legal support for its contention. Therefore, the Court makes no finding that Defendant is a fiduciary of the trust created under the CBA.

Although the Court finds the Defendant is a fiduciary for purposes of Article 3-A and ERISA, the Court must determine whether the Defendant is a fiduciary under Bankruptcy Code section 523(a)(4). Courts in the Second Circuit hold that a debtor that is a fiduciary of an Article 3-A trust is a fiduciary for purposes of Bankruptcy Code section 523(a)(4). *Havens v. Salman (In re Salman)*, No. 14-22017 (RDD), 2016 WL 11728990, at *6 (Bankr. S.D.N.Y. Nov. 7, 2016) (noting Article 3-A creates an express statutory trust giving rise to the fiduciary relationship

under Bankruptcy Code section 523(a)(4)).  Courts in in the Second Circuit hold that an ERISA

fiduciary *per se* satisfies the fiduciary requirement of 523(a)(4).  *In re Kakareko*, 575 B.R. at 26

(collecting cases).  This Court holds that a debtor that is a fiduciary under ERISA or Article 3-A

is a fiduciary for purposes of 523(a)(4).[5]

Defalcation

A fiduciary's failure to account for or turn over trust property can be defalcation for

purposes of section 523(a)(4).  *Chitester v. Watterson (In re Watterson)*, 524 B.R. 445, 453

(Bankr. E.D.N.Y. 2015).  However, defalcation requires proof that the debtor acted with a

culpable state of mind.  *Bullock v. BankChampaign, N.A.*, 569 U.S. at 269.  As stated by the

United States Supreme Court:

> Where actual knowledge of wrongdoing is lacking, we consider conduct as
> equivalent if the fiduciary consciously disregards (or is willfully blind to) a
> substantial and unjustifiable risk that his conduct will turn out to violate a fiduciary
> duty.  That risk must be of such a nature and degree that, considering the nature and
> purpose of the actor's conduct and the circumstances known to him, its disregard
> involves *a gross deviation* from the standard of conduct that a law-abiding person
> would observe in the actor's situation.

*Id.* at 273744 (citations and quotations omitted).

---

[5] Courts disagree whether a debtor that is a fiduciary for purposes of section 1002(21) is a fiduciary *per se* for
purposes of Bankruptcy Code section 523(a)(4).  *Compare Blyler v. Hemmeter (In re Hemmeter)*, 242 F.3d 1186,
1190 (9th Cir. 2001) ("ERISA satisfies the traditional requirements for a statutory fiduciary to qualify as a
fiduciary under [section] 523(a)(4)."), *and Russo v. Fahey (In re Fahey)*, 482 B.R. 678, 692 (1st Cir. BAP L.R.
2012) (holding that debtor that satisfied definition of fiduciary under ERISA was fiduciary for purposes of
Bankruptcy Code section 523(a)(4)), *with Bd. of Trs. of the Ohio Carpenters' Pension Fund v. Bucci (In re
Bucci)*, 493 F.3d 635, 641–42 (6th Cir. 2007) ("being an ERISA fiduciary is not itself sufficient to satisfy the
fiduciary capacity" and courts should "examine the substance of the alleged fiduciary relationship to determine if
the requirements for a defalcation are satisfied."), *and Hunter v. Philpott*, 373 F.3d 873, 875 (8th Cir. 2004)
(finding a "simple determination" that an individual is an ERISA fiduciary is insufficient and a court should "look
specifically at the property that is alleged to have been defalcated to determine whether [the individual] was
legally obligated to hold that specific property for the benefit of the [f]unds.").

Plaintiffs argue their claim arises from Defendant's intentional diversion of trust assets from the express and technical trusts created under Article 3-A, ERISA, the Trust Agreement, and the CBA.  Specifically, Plaintiffs claim the Defendant diverted trust funds:

(i)    to pay salary or draws of Fahrenheit Mechanical's officers, including (a) $443,465.70 from the Alma Account, including $159,183.00 to Defendant, and (b) $961,582.96 from the JPMorgan Account, including $103,767.00 to Defendant;

(ii)   by paying Defendant's family members (a) $220,000.00 from the Alma Account, and (b) $648,800.00 from the JPMorgan Account;

(iii)  by withdrawing $109,008.60 from the JPMorgan Account for gambling;

(iv)   by using $43,030.00 from the JPMorgan Account to buy jewelry and other gifts for Defendant's then-girlfriend; and

(v)    by using $79,612.50 from the Alma Account and $73,808.38 from the JPMorgan Account for Defendant's personal expenses such as entertainment, shopping, and meals.

Mooneyham Decl. ¶¶ 107–118; Mooneyham Decl., Ex. AN, Adv. Proc. ECF No. 25-15–18; Mooneyham Decl., Ex. AQ, Adv. Proc. ECF No. 26-4–26-5; Mooneyham Decl., Ex. BA, Adv. Proc. ECF No. 26-7; Mooneyham Decl., Ex. N, Adv. Proc. ECF No. 24-2–24-3; Mooneyham Decl., Ex. C, Adv. Proc. ECF No. 21-5; Mooneyham Decl., Ex. AF, Adv. Proc. ECF No. 25-7; Mooneyham Decl., Ex. Z, Adv. Proc. ECF No. 25-2; Mooneyham Decl., Ex. BB, Adv. Proc. ECF No. 26-7; Mooneyham Decl., Ex. BC, Adv. Proc. ECF No. 26-7.  Plaintiffs provide other instances of diversion.  The Court, however, cannot determine whether those additional examples of diversion are in addition to, or are included in, the instances provided above.

Defendant responds to Plaintiffs' claims of diversion by stating:

(i)    "I never consented to any 'diversion' of funds."  Aff. Def. Opp. Summ. J. ¶ 16.

(ii)   "I never advocated 'not paying' vendors or other corporate obligations, rather it was a question of which expenses needed to be paid to keep the jobs running smoothly enabling us to collect receivables."  Aff. Def. Opp. Summ. J. ¶ 20.

     (iii)    "Any funds that were received by Fahrenheit were paid to Fahrenheit. Those funds received by me were either a draw, a loan or repayment, and would be reflected as such." Aff. Def. Opp. Summ. J. ¶ 51.

Defendant does not argue that Fahrenheit Mechanical's funds were not trust assets. Defendant does not deny he used Fahrenheit Mechanical's funds to pay his family, his girlfriend, Fahrenheit Mechanical's officers, and his personal expenses and salary. Defendant does not explain why he transferred trust assets to his girlfriend, his family, Fahrenheit Mechanical's officers, or himself. Lastly, Defendant does not argue he was authorized to use trust assets for those purposes. Therefore, the Court finds the Defendant diverted trust fund assets.

The Court also finds the Defendant acted with the requisite intent. Defendant has significant experience in the construction industry, having operated other construction companies prior to operating Fahrenheit Mechanical. *See supra* at 5–6. Defendant knew or should have known that Fahrenheit Mechanical's funds were trust funds that had to be used only in accordance with New York lien law, ERISA, the Trust Agreement, and the CBA. As set forth above, Plaintiffs claim Defendant diverted $2,579,308.14. To put this in context, Fahrenheit Mechanical operated from 2018 to 2020 and "job income from April 2019 through June 2020 was $3,293,113.22." *See supra* at 3. Defendant's experience in the construction industry and the magnitude of the amounts diverted evidence that Defendant acted recklessly, and his conduct was a gross deviation from the standard of conduct that a law-abiding person would observe in the Defendant's circumstances.

**Objection to the Dischargeability of Plaintiffs' Claims under Bankruptcy Code section 523(a)(6) because Defendant's Willful and Malicious Conduct Injured the Plaintiffs**

"A discharge . . . does not discharge an individual debtor from any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity . . . ." 11 U.S.C. § 523(a)(6). To prevail on a claim under Bankruptcy Code section 523(a)(6), a plaintiff must prove

by a preponderance of evidence that (1) the debtor acted willfully, (2) the debtor acted maliciously, and (3) the debtor's willful and malicious actions caused injury to the plaintiff or the plaintiff's property. *Wu v. Lin (In re Qiao Lin)*, 576 B.R. 32, 41 (Bankr. E.D.N.Y. 2017); *Guggenheim Cap., LLC v. Birnbaum (In re Birnbaum)*, 513 B.R. 788, 802–03 (Bankr. E.D.N.Y. 2014).

The Bankruptcy Code does not define the term "willful." The Supreme Court has defined "willful" to mean "deliberate or intentional." *In re Birnbaum*, 513 B.R. at 803 (citing *Kawaauhau v. Geiger*, 523 U.S. 57, 61 n.3 (1998). A showing of willfulness for purposes of Bankruptcy Code section 523(a)(6) requires a showing that "the actor intend[ed] 'the consequences of an act,' not simply 'the act itself.'" *Id.*; *see also In re Qiao Lin*, 576 B.R. at 54 (willfulness under section 523(a)(6) requires proof of "a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury.") (emphasis in original); *Curtis v. Ferrandina (In re Ferrandina)*, 533 B.R. 11, 26 (Bankr. E.D.N.Y. 2015) ("Courts within the Second Circuit have found that if a debtor believes that an injury is substantially certain to result from his conduct, the debtor will be found to have possessed the requisite intent to injure . . . .") (collecting cases). Reckless or negligent conduct is not sufficient to satisfy section 523(a)(6)'s "willful" requirement. *In re Ferrandina*, 533 B.R. at 26.

The Bankruptcy Code does not define "malicious." The Second Circuit has defined "malicious" to mean "wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will." *Id.* at 26 (citing *Navistar Fin. Corp. v. Stelluti (In re Stelluti)*, 94 F.3d 84, 87 (2d Cir. 1996)). "Actual malice is present where there is 'a wrongful act done consciously and knowingly in the absence of just cause or excuse.'" *Moreno v. Orly*, No. 15-11650(JLG), Adv. Proc. No. 16-01020(JLG), 2016 WL 4376947, at *6 (Bankr. S.D.N.Y. Aug. 10, 2016) (quoting *Nesler v. Thomason (In re Thomason)*, 288 B.R. 812, 815 (Bankr. S.D. Ill. 2002)).

"Malice may be constructive or implied." *In re Stelluti*, 94 F.3d at 87 (citations omitted). Malice may be implied by the acts and conduct of the accused or "when anyone of reasonable intelligence knows that the act in question is contrary to commonly accepted duties in the ordinary relationships among people, and injurious to another." *In re Ferrandina*, 533 B.R. at 26 (citations omitted). When determining whether there is malice, bankruptcy courts look to the totality of the circumstances. *Rescuecom Corp. v. Khafaga (In re Khafaga)*, 419 B.R. 539, 550 (Bankr. E.D.N.Y. 2009).

Plaintiffs have proven by a preponderance that Defendant acted with malice. Actual malice is present here because Defendant's diversion of funds from the trust was a wrongful act that was done consciously and knowingly. *See infra* at 20. Meaning, Defendant knew Fahrenheit Mechanical's funds were trust funds that should have been used to make contributions in accordance with the CBA, Trust Agreement, New York Lien Law, and ERISA. Defendant did not have just cause to use the trust funds for other purposes. Further, malice may be implied because diverting trust funds (including using funds for one's personal expenses, paying family members, and buying gifts) is contrary to commonly accepted duties in relationships between an employer and employee.

Plaintiffs have not proven by a preponderance of the evidence that Defendant acted willfully. Although Plaintiffs proved Defendant acted recklessly and his actions constituted a gross deviation from the norm, Plaintiffs have not proven, by a preponderance of the evidence, that Defendant intended to injure Plaintiffs or that Defendant was substantially certain an injury would result from his diversion of funds. Therefore, this cause of action is dismissed.

**Objection to Defendant's Discharge under Bankruptcy Code Section 727(a)(3) Due to Defendant's Failure to Preserve Books and Records**

Under Bankruptcy Code section 727(a)(3), "[t]he court shall grant the debtor a discharge, unless . . . the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case. " 11 U.S.C. § 727(a)(3).

"The policy underlying [s]ection 727(a)(3) is to insure that the trustee and the creditors receive sufficient information to effectively enable them to trace the debtor's financial history, to ascertain the debtor's financial condition, and to reconstruct the debtor's business transactions." *Barristers Abstract Corp. v. Caulfield (In re Caulfield)*, 192 B.R. 808, 822 (Bankr. E.D.N.Y. 1996) (internal quotations and citations omitted); *see In re Underhill*, 82 F.2d 258, 260 (2d Cir. 1936), *cert. denied*, 299 U.S. 546 (1936) ("it is intended that there be available written evidence made and preserved from which the present financial condition of the bankrupt, and his business transactions for a reasonable period in the past may be ascertained."). Adequate record-keeping is a predicate for a debtor's discharge. *Ng v. Adler (In re Adler)*, 494 B.R. 43, 67 (Bankr. E.D.N.Y. 2013); s*ee Mendelsohn v. Kumar (In re Kumar)*, Adv. Proc. No. 20-8141-las, 2023 Bankr. LEXIS 1639, at *14 (Bankr. E.D.N.Y. June 26, 2023).

Courts use a two-prong test to determine whether to deny discharge under Bankruptcy Code section 727(a)(3). *In re Adler*, 494 B.R. at 67; *In re Kumar*, 2023 Bankr. LEXIS 1639, at *14. First, the party objecting to discharge under Bankruptcy Code section 727(a)(3) has the burden to show that "the debtor failed to keep and preserve any books or records from which the debtor's financial condition or business transactions might be ascertained." *Id.* at *15 (internal citations omitted). "[T]he adequacy" of a debtor's record-keeping is evaluated in light of eight,

non-exclusive factors: "(1) whether the debtor was engaged in business, and if so, the complexity and volume of the business; (2) the dollar amount of the debtor's obligations; (3) whether the debtor's failure to keep or preserve books and records was due to the debtor's fault; (4) the debtor's education, business experience, and sophistication; (5) the customary business practices, for record keeping in the debtor's type of business; (6) the degree of accuracy disclosed by the debtor's existing books and records; (7) the extent of any egregious conduct on the debtor's part; and (8) the debtor's courtroom demeanor." *Agai v. Antoniou (In re Antoniou)*, 527 B.R. 71, 78–79 (Bankr. E.D.N.Y. 2015) (quoting *State Bank of India v. Sethi (In re Sethi)*, 250 B.R. 831, 838 (Bankr. E.D.N.Y. 2000)).  A party objecting to discharge under Bankruptcy Code section 727(a)(3) need not prove fraudulent intent.  *Jacobowitz v. The Cadle Co. (In re Jacobowitz)*, 309 B.R. 429, 440 (S.D.N.Y. 2004); *In re Adler*, 494 B.R. at 67.

If the objecting party succeeds on the first prong, then the burden shifts to the debtor to show that his failure to produce was justified.  *In re Kumar*, 2023 Bankr. LEXIS 1639, at *15–16 (citing *D.A.N. Joint Venture v. Cacioli (In re Cacioli)*, 463 F.3d 229, 235 (2d Cir. 2006)).  The Bankruptcy Code does not define what constitutes "justification" for failing to maintain adequate records.  *Meridian Bank v. Alten*, 958 F.2d 1226, 1231 (3d Cir. 1992).  "Justification" is a question of reasonableness in the particular circumstances, in which courts consider multiple factors, including: (1) the debtor's education, experience, and sophistication; (2) the volume of the debtor's business; (3) the complexity of the debtor's business; (4) the amount of credit extended to debtor in his business; and (5) any other circumstances that should be considered in the interest of justice.  *Id.*; *see In re Sethi,* 250 B.R. at 839 (Bankr. E.D.N.Y. 2000) (A debtor's "explanation of [the] loss [of books and records] must be more than just vague and general oral assertions that assets or records are no longer available.").

Plaintiffs assert the Defendant failed to keep and preserve books or records from which his financial condition or business transactions might be ascertained, based on his failure to produce signed income tax returns and Fahrenheit Mechanical's books and records, including QuickBooks files, ledgers, profit-loss statements, balance sheets, or bank statements for the Alma Accounts. Mooneyham Decl., ¶¶ 57–59, 64, 65.

Fahrenheit Mechanical's business records are necessary to ascertain the Defendant's financial condition because, among other things, Fahrenheit Mechanical was majority owned by the Defendant, Fahrenheit Mechanical transferred significant funds from its bank accounts to Defendant's bank accounts and claims against the Defendant aggregating in excess of $3 million relate to Fahrenheit Mechanical. Am. Statement of Facts ¶¶ 115, 116, 152; Proofs of Claim Nos. 4-1, 6-1, 8-4, 9-1.

Defendant does not have Fahrenheit Mechanical's ledgers, profit and loss statements, balance sheets, or complete banking records. Am. Statement of Facts ¶¶ 86, 91. Defendant is experienced in the construction industry and was Fahrenheit Mechanical's principal decision maker. Am. Statement of Facts ¶¶ 95, 96, 98, 100, 117. Fahrenheit Mechanical was a business with at least eighteen employees, annual income over $2 million, and $3.4 million in payroll. Am. Statement of Facts ¶¶ 134, 143–145, 148. As such, the Defendant should have maintained and preserved financial records such as profit and loss statements, balance sheets, and complete bank records for Fahrenheit Mechanical. Accordingly, Plaintiffs have satisfied their burden of proving by a preponderance of the evidence that Defendant failed to keep or preserve books and records from which the Defendant's financial condition might be ascertained.

Plaintiffs contend that Christopher Travis, Esq., Defendant's personal attorney, collected Fahrenheit Mechanical's physical and digital files. Am. Statement of Facts ¶ 189. Ultimately,

Fahrenheit Mechanical's filing cabinets of physical books and records were stored at a warehouse owned by the Defendant's family. Am. Statement of Facts ¶ 195. Plaintiffs argue that the Defendant has offered no explanation as to why Fahrenheit Mechanical's file cabinets were found at the warehouse but the books and records were not, why Fahrenheit Mechanical's server and computers are gone, or why Defendant's attorney no longer has the books and records he allegedly collected. Pl. MOL at 27.

Defendant claims that toward the end of 2020, he was admitted into a psychiatric ward and then confined to a rehabilitation program for two months. Aff. Def. Opp. Summ. J. ¶¶ 26, 27. Defendant claims when he was able to "continue," Fahrenheit had closed. Aff. Def. Opp. Summ. J. ¶ 35. Defendant testified that he does not recall having any conversations concerning storage of Fahrenheit's books and records. Def. Dep. 45:19–24. Nonetheless, he admits the books and records were sent to his father's warehouse. Def. Dep. 52:20–53:3. Defendant claims he searched the warehouse where he believed the items were stored and questioned employees at the location. Aff. Def. Opp. Summ. J. ¶ 38; Def. Dep. 48:14–22. Defendant provides no explanation for his failure to produce his signed tax returns. However, the Court has no evidence either way that the tax returns produced by the Defendant were not accurate copies of the filed returns.

The Court finds there are disputed questions as to material facts concerning whether Defendant was justified in not producing Fahrenheit Mechanical's books and records. Defendant's failure to produce books and records would be justified if Fahrenheit Mechanical's books and records were lost or destroyed without Defendant's knowledge while he was institutionalized. Accordingly, Plaintiffs' motion for summary judgment on this claim for relief is denied.

**Objection to Defendant's Discharge under Bankruptcy Code Section 727(a)(4) Due to Defendant's Alleged False Oaths**

Under Bankruptcy Code section 727(a)(4)(A), a court may not discharge a debtor if he or she "knowingly and fraudulently, in or in connection with the case, made a false oath or account." 11 U.S.C. § 727(a)(4)(A). The discharge may be denied if plaintiff proves, by a preponderance of the evidence, that: "(1) the debtor made a statement under oath; (2) the statement was false; (3) the statement related materially to the bankruptcy case; (4) the debtor knew the statement was false; and (5) the debtor made the statement with fraudulent intent." *In re Adler*, 494 B.R. at 74 (quoting *Dubrowsky v. Estate of Perlbinder (In re Dubrowsky)*, 244 B.R. 560, 572 (E.D.N.Y. 2000)).

Plaintiffs allege that Defendant's Second Amended Statement of Financial Affairs is false because the Defendant represented that he had no income in the two years prior to the Petition Date. Am. Statement of Facts ¶ 208. Plaintiffs allege that Defendant failed to disclose in his Second Amended Statement of Financial Affairs that he received pre-Petition Date wages of $27,600.00 from Fahrenheit Mechanical. Am. Statement of Facts ¶ 208(a). Plaintiffs support the allegation with a chart identified as Plaintiffs' Exhibit V and copies of Fahrenheit Mechanical's and Defendant's bank statements. Am. Statement of Facts ¶ 208(a); Mooneyham Decl., Ex. AP, Adv. Proc. ECF No. 26-3; Mooneyham Decl., Ex. T, Adv. Proc. ECF Nos. 24-9–24-12; Mooneyham Decl., Ex. U, Adv. Proc. ECF No. 24-13; Mooneyham Decl., Ex. V, Adv. Proc. ECF No. 24-14.

Plaintiffs represent that Exhibit V is a true and correct copy of Fahrenheit Mechanical's accounting of its 2021 PPP loan disbursements. Mooneyham Decl. ¶ 39(d). However, Plaintiffs have neither identified the person who created the chart nor explained how the chart was generated. Additionally, the bank statements provided by Plaintiffs do not reflect the

transfers from Fahrenheit Mechanical to Defendant that are set forth in Exhibit V. For example, Plaintiff's Exhibit V references a $13,000 transfer on April 30, 2021, and a $3,100 transfer on May 28, 2021, from Fahrenheit Mechanical to Defendant for wages. Mooneyham Decl., Ex. V, Adv. Proc. ECF No. 24-14. Fahrenheit Mechanical's April and May 2021 TD Bank statements do not reference any transfers to Defendant. Mooneyham Decl., Ex. U, Adv. Proc. ECF No. 24-13, pp. 3–8. To the contrary, the April and May 2021 TD Bank statements reference two credits to the accounts from Christopher Travis, Defendant's attorney - a $13,000 wire transfer made on April 30, 2021 and a $3,100 wire transfer made on May 28, 2021. *Id.* None of the other alleged transfers from Fahrenheit Mechanical to Defendant referenced in Plaintiffs' Exhibit V appear in the TD Bank statements.

Plaintiffs claim Defendant received a $20,000 transfer from Fahrenheit Mechanical on April 15, 2021. Mooneyham Decl. ¶ 157(a)(i). Defendant's Chase Bank statements for the period March 25, 2021, to April 26, 2021 reflect an incoming $20,000 wire, but that was from Christopher Travis, not Fahrenheit Mechanical. Mooneyham Decl., Ex. AP, Adv. Proc. ECF No. 26-3. Similarly, the $3,100 transfer on May 28, 2021, and the $2,500 transfer on August 23, 2021, that Plaintiffs allege are from Fahrenheit Mechanical to Defendant appear to be transfers from Christopher Travis. Mooneyham Decl., Ex. T, Adv. Proc. ECF No. 24-9. Therefore, the Court finds that Plaintiffs have failed to prove that Defendant received $27,600.00 in wages from Fahrenheit Mechanical.

Plaintiffs correctly note that Fahrenheit Mechanical transferred $1,000 to Defendant on June 16, 2021 and June 18, 2021. Mooneyham Decl., Ex. U, Adv. Proc. ECF No. 24-13; Mooneyham Decl., Ex. T, Adv. Proc. ECF No. 24-9. The Court cannot determine whether those two transfers were for wages.

Plaintiffs allege Defendant received the benefit of an additional $22,592.50 of Fahrenheit Mechanical's 2021 PPP loan.  Am. Statement of Facts ¶ 208(b).  In support of that allegation, Plaintiffs again rely on Exhibit V.  Mooneyham Decl., Ex. V, Adv. Proc. ECF No. 24-14.  As set forth above, Exhibit V is unreliable.  Plaintiffs also rely on the bank statements identified as Exhibit U.  Mooneyham Decl., Ex. U, Adv. Proc. ECF No. 24-13.  Plaintiffs, however, do not identify which transfers on the bank statements in Exhibit U benefitted Defendant.

Plaintiffs claim Defendant also failed to disclose $66,967.78 of deposits into Defendant's personal bank account.  Am. Statement of Facts ¶ 208(c).  Plaintiffs may be correct that the funds were deposited into Defendant's account; however, Plaintiffs have not established the transfers are the Defendant's income from employment or from operating a business, as opposed to support from friends and family.  *See* Def. Dep. 66:24–67:16, 68:5–13, 71:7–20 (Defendant's testimony that he received financial support from family).  The Statement of Financial Affairs only asks debtors to disclose "income from employment or from operating a business."  Accordingly, Plaintiffs failed to prove that the Defendant earned income from wages or the operation of a business that is not disclosed on the Defendant's Statement of Financial Affairs or Amended Statement of Financial Affairs.

Plaintiffs claim Defendant's Schedules are false because Defendant's original Schedules disclosed ownership interests in four motorcycles and Defendant's amended Schedules omitted those four motorcycles.  Mooneyham Decl. ¶ 161.  Defendant testified he omitted the motorcycles in his amended Schedules because after he filed his original Schedules, he was told that Fahrenheit Mechanical, not the Defendant, was on the title to the vehicles.  Def. Dep. 155:8–13.  Plaintiffs have not provided evidence that Defendant held title to the motorcycles or had an equitable interest in the motorcycles.

However, Plaintiffs have proven that the Defendant failed to disclose in his Schedules that: (i) he had interests in an investment account and certain limited liability companies; (ii) he received income from gambling; and (iii) he made significant gifts to his girlfriend. Specifically, Plaintiffs have proven:

- Defendant failed to disclose his interest in a Robinhood investment brokerage account. Am. Statement of Facts ¶ 207(a). Defendant admitted he did not list the Robinhood investment brokerage account in his Schedules. Def. Counter-Statement ¶ 207.

- Defendant failed to disclose that he holds a legal or equitable interest in The Phoenix Network LLC, S.D.B. Contracting LLC, SR3 Electric LLC, and Chron NY Productions LLC. Mooneyham Decl. ¶ 155. Plaintiffs' proof that Defendant has an interest in the limited liability companies is the Defendant's unsigned tax returns for 2018 through 2022, inclusive. Mooneyham Decl., Ex. AF, Adv. Proc. ECF No. 25-7; Mooneyham Decl., Ex. AG, Adv. Proc. ECF No. 25-8. In those returns, Defendant reported he owned interests in those companies. Mooneyham Decl., Ex. AF, Adv. Proc. ECF No. 25-7. Defendant denied Plaintiffs' allegation that Defendant failed to disclose his interest in those limited liability companies. Def. Counter-Statement ¶ 206. Defendant, however, provides no explanation why the companies are referenced in his tax returns but not in his bankruptcy Schedules. Defendant's only explanation is Phoenix Network LLC, S.D.B. Contracting LLC, and SR3 Electric LLC no longer operate. *See* Def. Dep. 18:7-24; 291:9-11.

- Defendant failed to disclose $8,755.00 in gambling winnings. Am. Statement of Facts ¶ 210. Defendant admitted he received gambling winnings and did not disclose the winnings on his schedules. Def. Counter-Statement ¶ 210.

- Defendant failed to disclose gifts he made to his girlfriend in the two years prior to bankruptcy. Mooneyham Decl. ¶ 158. Plaintiffs provided bank statements reflecting 19 payments totaling $16,850.00 from Defendant's JPMorgan Account and 14 payments totaling $11,710 from Defendant's TD Bank Account to Defendant's girlfriend. Mooneyham Decl., Ex. T, Adv. Proc. ECF No. 24-9–24-12; Mooneyham Decl. Ex., AP, Adv. Proc. ECF No. 26-3. Additionally, Defendant's bank statements and Fahrenheit Mechanical's bank statements reflect payments that are likely gifts to Defendant's girlfriend. Mooneyham Decl. ¶¶ 158, 163; Mooneyham Decl., Ex. T, Adv. Proc. ECF No. 24-9–24-12; Mooneyham Decl., Ex. U, Adv. Proc. ECF No. 24-13; Mooneyham Decl. Ex., AP, Adv. Proc. ECF No. 26-3; Mooneyham Decl. Ex., BB, Adv. Proc. ECF No. 26-7. Defendant denies that he failed to disclose gifts on his Statement of Financial Affairs. Def. Counter-Statement ¶ 209. Defendant, however, does not deny the transfers from himself and Fahrenheit Mechanical were to, or for the benefit of, his girlfriend.

Respecting materiality, "a 'material matter' is 'one bearing a relationship to the debtor's business transactions or estate or which would lead to the discovery of assets, business dealings or existence or disposition of property.'" *Carlucci & Legum v. Murray (In re Murray)*, 249 B.R. 223, 230 (E.D.N.Y. 2000). A debtor's failure to disclose exempt or worthless assets can be material. *Id.* at 231–32. The Defendant's failure to disclose his interests in the three limited liability companies and the Robinhood account is material because the companies and the account are property of the bankruptcy estate. The Defendant's failure to disclose the gifts and gambling winnings are material because the disclosures relate to the Defendant's disposition of property.

Regarding the fifth element, "[f]raudulent intent must be shown by actual, not constructive fraud.  The party objecting to the discharge must show that the information was omitted for the specific purpose of perpetrating a fraud and not simply because the debtor was careless or failed to fully understand his attorney's instructions." *In re Dubrowsky*, 244 B.R. at 571–72 (internal citations omitted).  However, a debtor's reckless indifference to the truth may be sufficient to establish the requisite fraudulent intent.  *Diorio v. Kreisler-Borg Constr. Co. (In re Diorio)*, 407 F.2d 1330, 1331 (2d Cir. 1969); *Thaler v. Davis (In re Davis)*, No. 23-71984-REG, 2025 WL 1448570, at *4 (Bankr. E.D.N.Y. May 20, 2025).  "[O]nce the objecting creditor has produced persuasive evidence of a false statement, the burden shifts to the debtor to come forward with evidence to prove that it was not an intentional misrepresentation." *Pereira v. Gardner (In re Gardner)*, 384 B.R. 654, 662 (Bankr. S.D.N.Y. 2008) (citations omitted).

The Defendant denied that he knew of the misstatements and omissions in his Schedules and Statements of Financial Affairs, stating he "never knowingly filed a false statement, and [his] [S]chedules and papers were true to the best of [his] knowledge at the time of them being filed."  Aff. Def. Opp. Summ. J. ¶ 47.  The Defendant, however, failed to provide any explanation (much less a credible explanation) for the omissions in his Schedules and Statements of Financial Affairs.  He does not claim that he did not understand the importance of full disclosure in his Schedules or Statement of Financial Affairs.  He does not claim he acted with care and diligence in completing his Schedules or Statements of Financial Affairs.  To the contrary, the Defendant amended his Schedules twice and failed to include his Robinhood account, gambling winnings, interests in his companies, or his gifts.  The Court finds that the Defendant failed to satisfy his burden of coming forward with evidence that the false statements

in his Schedules and Statements of Financial Affairs were made without knowledge or fraudulent intent.

The Plaintiffs have satisfied their burden of proof and the Defendant's discharge is denied under Bankruptcy Code section 727(a)(4).

### <u>CONCLUSION</u>

The Court will enter an order and judgment that:

1. Plaintiffs' claims are nondischargeable under 11 U.S.C. § 523(a)(4).

2. Defendant's discharge is denied under 11 U.S.C. § 727(a)(4).

3. Plaintiff's motion for summary judgment to deny Defendant's discharge under 11 U.S.C. § 727(a)(3) is denied.

4. Plaintiffs' Third Cause of Action is dismissed solely to the extent Plaintiffs seek a declaration the Plaintiffs' claims are nondischargeable under 11 U.S.C. § 523(a)(6).

Plaintiffs are directed to submit an order consistent with this memorandum within fourteen (14) days of its entry.



Dated: August 19, 2025
      Brooklyn, New York

Jil Mazer-Marino
United States Bankruptcy Judge